Good afternoon, Illinois Appellate Court, 1st District Court is now in session, the 6th Division, the Honorable Justice Sharon O. Johnson presiding, case number 22-0837, consolidated with 22-1821, People v. DeVille McCants. Good afternoon. I'll begin by thanking you for your patience this afternoon. We've had some technical difficulties, but we will begin momentarily. Thank you again for your patience. I'm Justice Sharon Oden Johnson, and I'm joined by my colleagues, Justice Michael B. Hyman and Justice Carl A. Walker. Will the appellant's attorney please state your appearance for the record? Sure. Good afternoon, Your Honors. My name is Pamela Rubio with the Office of the State Appellate Defender, and I represent DeVille McCants. Thank you. And appellee's counsel, please. Good afternoon for the People Assistant State's Attorney, Andrea Salone. Thank you. So you'll each be given 20 minutes in which to state your arguments today, with the appellant having an opportunity to reserve time for rebuttal. Will the appellant's attorney indicate how much time you'd like to reserve for rebuttal? A few minutes, two or three should be fine. Okay. Very well, you may begin. Thank you. May it please the Court. DeVille McCants made a substantial showing in his post-conviction petition that his constitutional rights to due process and the effective assistance of counsel were violated when his void prior gun conviction was considered and utilized during plea proceedings. There's no dispute that DeVille's only prior conviction was a void conviction. I've read the briefs and reviewed the record. So my question is, with regard to the first argument you make, you cite many cases as to why we should reverse. What are, in your opinion, what are the one or two most important cases? And if we follow these cases, they would warrant our reversing. Well, with respect to the first issue, I think Pullen is a good case to rely on. Their guilty plea was entered with the misunderstanding of the application of the proper sentencing range. And there they said that that invalidated the plea because there was not a complete understanding of the plea proceedings and the agreements that were made. Donaldson also relates to a mutual mistake with a guilty plea. In that case, they were able to rectify the error so that that defendant received the benefit of his bargain. But in this case, withdrawal of DeVille's guilty plea is the only way to recourse the error here because he relied on misinformation during the guilty plea process. There was a jury ready to be wardered. And right after the ruling on the Montgomery motion, DeVille changed his mind and waived his right to a jury and waived his right to testify on his behalf. The defense had answered in discovery that he was planning on presenting an alibi defense, I'm sorry, a self-defense defense, and he was going to testify to that. So the trial judge's misunderstanding of the validity of DeVille's void prior really affected the way the proceedings were undertaken during the guilty plea proceedings. So not only did it affect his decision making on the plea, but then it also affected the plea proceedings themselves. All the parties were laboring under a misapprehension of the law and of DeVille's prior criminal history. This was DeVille's only prior conviction. And so, you know, the judge himself said, I don't need to accept this, this offer. I don't need to accept this guilty plea. This was a negotiated plea, but I still have the discretion and explicitly referenced DeVille's prior conviction in accepting the plea and imposing the sentence of 16 years. So we have the case law that relates to guilty pleas and how a misapprehension of the law requires. It wasn't any misrepresentation of the law at the time that the guilty plea was accepted. I'm sorry, I didn't hear the first one. It was not a misapprehension of the law at the time the guilty plea was accepted. Actually, I believe it was because DeVille's prior conviction is. Aguilar hadn't come down, isn't this, isn't this whole thing based on Aguilar? I mean, if we didn't have Aguilar here, I don't know if he would be before us. So isn't that at issue here? I would be before you because Aguilar's PLA was pending at the time of DeVille's guilty plea. Before that, we had Moore v. Madigan. We had Heller. We had McDonald. OK, so now we have Aguilar. So what is Aguilar? Doesn't that change things? Aguilar provided Illinois law that confirmed that the federal law applied to Illinois statutes. But as NG stated, a void gun conviction is void ab initio. It's as if it had never existed. But Aguilar hadn't been decided at the time that this case, I understand it was before the Supreme Court. I understand that. But it hadn't been decided. So the law was still the law. So are you saying we look at this at the time of the sentencing? Or are we to look at it from the point of view after Aguilar? In this case, both. Because I believe that defense counsel, the state, the court was put on notice that this issue was percolating. Just because the issue was put on notice doesn't mean it was put on notice. That doesn't mean they made a mistake. It was put on notice. So there's an appeal. It could have gone either way. So my question is, isn't it something we look at from the point of view after Aguilar? No, again, NG says that these convictions are void ab initio, as if they had never existed. And this court has held in many cases that impeachment of a defendant using an Aguilar conviction that was later declared vacated requires a remand for a new trial. If it's not harmless beyond a reasonable doubt, because it's a constitutional issue. And also cases have held that resentencing is required when a court considered an Aguilar prior, even before that prior was later vacated in, say, a 214-01 petition like DeVille did. But in those cases, we've got Phillips, we have Cody, we have Scott, we have Smith. All of those dealt with cases where a defendant was sentenced, where the sentencing judge used a void, I would call it a void gun conviction, even before Aguilar came down. And even before that conviction had been vacated in later proceedings. In those cases, the court still said, because they're void ab initio, it has to go down for resentencing. And here we have a unique situation because this involves a guilty plea. And we have different considerations to make. But I believe that DeVille made a substantial showing both that the consideration of his void gun conviction during the plea proceedings and prior to the plea proceedings, where he waived his right to testify and waived his right to a jury trial, requires a third stage evidentiary hearing. And also that his counsel was ineffective for not preventing the party's use and utilization of this prior, his only prior, in crafting a sentence in this case. This is really very different from the Illinois Supreme Court case, Robert Jones, that the state cites too. Because in Jones, that case involved a knowing involuntary guilty plea, which waived constitutional challenges based on subsequent changes in the law. But again, we're talking about a situation where we're dealing with a conviction that is void, as if it never existed. And NG warned against punish counsel twice for suggesting that it's still ineffective assistance, even though the law. I think we have a prose on my end. Yes. What we can wait. Sure. Let me check justice. Hold on. Technology is great until it doesn't work. Yeah. Is it working now. Are you frozen council. She's not frozen. Okay. Come back to your original question just assignment. You ask counsel to cite the cases that the two cases that we did she most rely on and I'm not sure that I heard the answer. I was having some connection problem. So I'm actually no longer on my computer. I'm on my phone now. So, but if you could answer that question, counsel. Sure. Well, as it relates to, like I said before, there's not a case directly on point involving the use of avoid prior during plea proceedings. But we do have many cases such as billups. Cody. Let's see. Scott Smith. Why do you think the proceedings are different? So why do you believe that they're different? Well, I don't believe that they're different. I think that this law should apply to guilty plea proceedings, both because we have case law that establishes that use of avoid prior during sentencing, even when it hasn't been technically vacated, still requires a remand for resentencing. And we also have case law that supports such as Donaldson and Poland that state that guilty pleas are invalid if they're based on a misapprehension or a mutual mistake. And here, all the parties were proceeding under a misunderstanding of the viability of devils prior conviction. Everybody was proceeding as if they could rely on that during the plea proceedings. And it was void ab initio from the start. So it couldn't have been. So I think that those both sets of those cases work together to to require a finding that in this case devils plea wasn't was was based on a misunderstanding of the law was based on a misunderstanding of the facts and that his all the parties entered into an agreement that that was based on a void prior conviction. And the case law states that a remand or say resentencing is required if the record does not affirmatively show that it was not something that affected the sentencing. And here we have the opposite. We have an affirmative showing on the record that shows that the court did consider devils prior conviction in accepting the plea and entering a sentence here. It was his only prior and the judge referenced his criminal history. We also have affirmative information on the record suggesting that the bill would not have pled guilty and would have gone to to a trial would have exercised his right to a jury trial and to testify. If all the parties were on the same page and had properly informed him that the Montgomery motion should have been denied because this prior could not be used for impeachment of him. And in that case, you know, he doesn't have to prove that he doesn't he doesn't have to prove that he would have been successful at a trial at this point. He has to make a substantial showing that that is not rebutted by the record. And here we have information that supports his factual assertions. It's still at second stage here. We have to take these these facts as true. And it's interesting to know that when this case was up before the appellate court the last time when this petition had been dismissed at the first stage. It was the state's attorney's office who reached out and initiated an agreed motion agreeing that the facts taken as true at least at the first stage had merit that that a constitutional violation had occurred. And since then, nothing has changed. And as I explained earlier, the Supreme Court case Jones did not change the law that Jones did not change law as it related to classic guilty plea law about the about the use of void convictions about effective assistance of counsel as it relates to guilty plea proceedings. Jones didn't didn't come out and say, well, that defendants constitutional rights were violated and we don't care. Jones said that defendants constitutional rights were not violated. So we're fine to the state's argument, though, that what difference does all of that make? Because at the time that he pled the it was the that portion of the statute, the was not unconstitutional. That's the state says that it was always unconstitutional. It's as if it never existed. And Angie warns us not to have defendants suffer anew by utilizing avoid prior conviction that violated that defendant's Second Amendment rights again later in different proceedings. Angie says it's as if it is as if it never existed. And so we have to follow that law. And all of these arguments were already parsed out in Angie. So. Whether that, you know, again, there's a handful of cases where a defendant later goes and files a 214 petition like to build it and gets his prior conviction vacated. And even in those cases, it doesn't matter about the timing of when that when that occurred because that prior conviction was always void. And. If this court has no further questions. I will reserve my time for rebuttal. Okay, very well, thank you. And just for the record, even though my system went out, I could still hear your argument. See me. Did you still want to ask the question you you were going to ask. Not at this time. Okay. All right. Thank you so much. Kelly's counseling may proceed. Again, for the record, Assistant State's Attorney Andrea Salone for the people may it please the court. Petitioner failed to make a substantial showing that his constitutional rights were violated where he knowingly involuntarily made where his knowingly involuntarily made plea cannot be void ab initio under the Supreme Court's ruling and people versus Jones. He also fails under Strickland versus Washington in each iteration of ineffective assistance of trial counsel. And as such, he fails under the lower reasonable assistance standard and his unreasonable assistance of PC counsel claim, which is not being argued on today. So the people ask that you will affirm the trial court second stage dismissal of his PC petition. As he's not met his burden to show a substantial violation of this constitutional right. Isn't it a substantial violation when the Illinois Supreme Court said in NG that the invalidated a UUW convictions must be given retroactive effect. Meaning that their ab initio not there. I mean, it's if he was never convicted of that. And if he wasn't convicted in the judge on both indictments said. He that he referred to the. Convictions so conviction, so. How do you get around that? I mean, if you asking us to ignore and tell us how we can. How do we how do we reconcile those? I'm absolutely not asking you to ignore. I'm asking, you know, if your brief does not mention NG at all. I mean, we could assume then that you don't dispute NG and it's applicability because it's not even discussed in the blue brief. I do not dispute that NG is stands for the proposition that cases that have been later found to convictions that have been later found to be unconstitutional are void ab initio and assets. They have no legal effect. However, I think it's important to look at NG in the context in which it was written and that when you parallel that with. Well, let's just since we're having a conversation. NG is a civil case. It stands for the proposition that any type of unconstitutional conviction can be challenged at any time. I do not dispute that. I think that his. W07 conviction was rightly vacated. However, that does not in any way take away from a people's position and argument that in this case, there was no abuse of discretion by the trial court and there was no ineffective assistance of trial counsel. And as such, he has not shown that a substantial constitutional right is one of his substance. One of his constitutional rights was substantially violated in the context of the fact that he entered a plea. He entered the negotiations knowingly and voluntarily and received a benefit for that. Isn't it relevant that he entered that plea immediately after the Montgomery motion so that when he was said he was going to testify and that would come in, that's when this agreement to resolve it on a plea was reached. And as I said before, the judge even mentioned the priors. So the priors conviction. So it is baked into this case. And if it's not there, ab initio, how can again, it seems to me that you're arguing. No, sir. And I'll explain the. It has no legal effect. The 07 is void ab initio. However, NG does not invalidate people versus Jones, which came out three years later. The Supreme Court took the extra step in Jones of, of holding sacrosanct and reaffirming the, the, the strength of parties interest in being able to enter into plea and no, no, Justice Hyman. It wasn't that he, this defendant or petitioner decided to plea immediately after the motion eliminate ruling. The record doesn't reflect exactly that the record reflects that there had been ongoing plea negotiations. In fact, so much so that when his counsel came back into the room after speaking with him and said he wants to take the offer, the state informed the judge, he's going to take 15 years on the ag bat firearm. Now that is not, and then had to be corrected by petitioner's counsel and saying, no, he wants to sell plus four. And that's evidence that there is there was back and forth. There was ongoing negotiations. It wasn't just, but that all doesn't really get into the fact that Jones doesn't even apply because in Jones, it was a sentencing scheme. That was an issue, not an ab initio ruling. This is ab initio. That, that means it, it never was here. That's an insane scheme is a lot different. So if Jones doesn't apply, would you, do you lose? I taking your 1st question. 1st point for, I disagree that Jones doesn't apply. I disagree that it. Well, how does Jones apply because it specifically as it was sentencing, which would have applied that's a lot different than something that's unconstitutional ab initio to, to, to equate those 2 things would conflate the constitution. Oh, Jones applies because in Jones, the court found the Supreme Court said after Henry and G. So, clearly, they fully knew what they wrote in Henry Indy, and they still said that knowing involuntarily made guilty plea waves, any constitutional challenge based on subsequent changes in the applicable law. And so that's exactly what you have here. This that sentence alone is broad enough to encompass a sentencing scheme later, anytime you have, or, or a sentence. And in fact, the fact that he wasn't sentenced as all people versus bill up people versus Smith people versus Williams, and all of the cases that relies on May I jump in for a second council. What's different here is you're saying you're talking about subsequent changes in the law here. It was there was no subsequent change in the law. What it is, is that the law that existed was simply declared unconstitutional such that it has no force and effect, then no force and effect now no force and effect in the future. But I think you have a better argument that I'd like you to address. And I think what's going on here and you do make it in your brief. I'm just coming back around to it. But because I want you to expound on it, is that here, there was a, a plea agreement, and all the trial court judge did here is just went along with the plea agreement. The trial court judge didn't add any additional time didn't take away any time, just went along with the agreement that the parties brought before her. So do you want to respond how that makes this case different. Yes. And beyond the fact that the court did not disturb the plea agreement. It is the fact that the petitioner was a participant in the agreement, you know, the way the petitioner brief is outlined is as if he was extricated from all of that and I understand. Thank you, both Justice Walker and Justice Hyman. Questions about how we're applying a void ab initio conviction retrospectively still saying that it's not that therefore wasn't a constitutional violation. The thing is, it doesn't, the concept of void ab initio as it's coming out of Henry NG does not extend to beyond the fact that he is conviction no longer exists, it has no legal effect, it doesn't extend to the fact that he was a willing participant in his negotiations and voluntarily entered the plea, knowing what he knew at the time, and the same for his attorney, and the same for the judge. And that's the entire expected counsel because that's exactly what you argue your brief. But what maybe what's different here though is that but for that conviction of violating the UW act, the portion of statute that was declared unconstitutional. The trial just specifically said that because of his background because but for that he would have had no background, you would only be looking at the two charges that were before the court, but the court, and Justice Hyman and Justice Johnson both mentioned this already earlier on, but here, the court looks specifically to his background as a basis for accepting the plea. And that's why I wanted to start where we started and now get you here. And that's maybe that's what makes this different so help us with that as to why that doesn't make this a situation where the former, the prior unconstitutional conviction was used against him in the sentencing because it seems as though had he not had that background, the way the court was speaking, that the judge would have gone, would not have gone along with the plea had he had no background. That's how it sounded. That is how it sounded. And in fact, one of the, the case that petitioner relied on about 15 minutes ago and Donaldson explains it better the principal inquiry there is whether defendant has received the benefit of his bargain and we know that he did because the court didn't disturb his, his sentence. So, while Justice Walker you're saying that the court that they, they relied on it. I don't. The record doesn't reflect that she relied on it to any extent. In, as you see in people versus Smith and people versus Philip, where you have the sentencing hearings and they're weighing and balancing and receiving testimony. Consider anything else. The judge said that she considered. And this is in summary and not verbatim. She said that she considered his background factors and aggravation and mitigation and the facts of the case, and the facts of the case is the only thing that the judge then gave us on it saying, you know, you shouldn't handle things that way. I eat, you know, shooting your friend in the face. She did not unlike all of these other cases. What I'm saying is, is that it's speculative it's purely speculative to to say that she heard the state rattle off one, one conviction and probably seven years ago seven and UW judge, and that she then went with the 12 plus four because of that, I, it doesn't rise to the level of reliance. And in fact, I would say it's essentially de minimis in fact you can say that his lack of background is probably why she went along with the agreement, but he received the years that he wanted. And that's actually received the benefit in in complete, because he's out of custody now. So, well, what the judge said though counselor just said, I will go along with the plea based on defendants criminal history. Then the judge went on to say that based on the current defendants criminal history. I will sentence him per the agreement. That's exactly what the judge said. So that infers that it is a lack of. I'm sorry. Okay, no, you go ahead because you make it a good point. Go ahead. Finish your point, the lack of a substantial background of violent background, he has a gun possession, a class for gun possession. You know, now, not void evidence, but it's the lack of background that she. Now, how do we know that though, because I think this is what was said earlier, I think it was just a time to ask you, of course, how do we know that, because the way this reads. You agree with me earlier when I said how it sounded. And you're telling us that it's because of his lack of background, and I'm just trying to get clear on how do we know that, because originally you read it the way I read it. It differently, which I agree with your meeting that that's another possible reading. So, it reminds me of the chicken versus chicken case you guys remember that reminds me of the chicken versus chicken case. You know, everybody hears things differently. However, this judge defendant was facing six to 30 years on an attempt first degree murder before he decided he wanted to take the judge's offer six to 30 years plus a 25 year firearm enhancement. So, that's the range that she, even on just an Agbat firearm, even if he just plead guilty to the charge of the state, and he negotiated for him to plead out to, he's looking at between six and 30 years. And for the judge who had the discretion to not go along with their agreement, we'd be having a different conversation if she had said I'm not going to go along with this. I don't think it's enough. It's 30. We'd be having a different conversation if he also had a more extensive background. Isn't that correct? Yes, and I'm saying that the lack of the background is why it's not 30. The lack of the background is why even the state would offer 12 plus four. But we don't we don't know that. I mean that's not in the record. And so that like you said before it's, there's a lot of speculation here. So it seems that this case doesn't need to get into all that. If, if we just follow. Well, sir, Justice Hyman, the record does show that he entered into a fully negotiated plea after a span of time of negotiating that, that he, that the state thought he wanted something even lower and he was, he was corrected and he corrected the state and said no I want 12 plus four, 16 instead of 15. The record shows that he did not plead to AGUW. He did not plead to a charge that was void ab initio. He did not plead that AGUW isn't a predicate of AGBAT firearm or an enhancing. That's not the issue. That's not the issue. Yeah, the other thing too is, I think that this would be a different question if, if, if the trial court had gone for it with a third stage evidentiary hearing. And now we were having this discussion, because it seems like the discussion taking place now would be more appropriate after a third stage evidentiary hearing. It seems like that this is the second stage. So, your argument counsel is that he is not produced enough to to pass mustard for the second stage. That's what I'm. I think that that's correct where there is. I'm saying that I hope answers Justice Hyman's inquiry of me that NRE NG does not extend to a person's participation in a plea negotiation that NRE NG did not avoid ab initio concept doesn't take him out of the conversation. It's not just the state and and the bench. It's also the the petitioner himself, who was in that and so he can't extricate himself from that conversation after especially after receiving the benefit of his bargain, which is what Jones stands for. I do have another question, somewhat related to Justice Walker's question and that is. So the state agreed to vacate the first stage dismissal. Correct. So, And then, yes, I have an issue there because that there was an internal email that was made a part of the record. The state did agree. I mean, and then there was a hearing the state agreed because it the burden at the first stage privilege or patently without merit is solo and the state in an internal only email said, we might as well send it back for economy reasons. But that agreement. So that's not my question. I'm just saying you agreed to vacate it at the first stage. So now we're at the second stage. And so what do you think, well, what's aside from the standard of review. Why is your position difference. Our position. Well, aside from the standard, it wasn't different at all. Because if you take a look at our argument there, we vehemently argued that just the same as we have been in each day. So the only reason that my supervisor agreed to send it back is because it for economical reasons, really. And because we can see that the burden is so low there that really anybody can make an arguable claim. But that doesn't mean that he made a substantial showing of a constitutional violation. Now, Council mentioned that in their study of cases that the sentencing was affected. And in this case, that the sentencing was affected by the state disproper of he has all for aggie UW. In the case that Council cited, it was found that it was affected by it because there was a sliding scale and the judge made a decision. And here, the judge did not move off of the party's agreement. However, just because we just considered it doesn't mean that it was affected and there is no case saying that something has to be affected if it is just mentioned and considered. The judge didn't say, I was affected by this. He said, I considered factors and navigate. And honestly, you know, what she rattled off is, it's almost akin to a script. So, Council, go ahead and you go just a chance. So, opposing council is saying this is a can to end the case law supports that this is akin to a contract where there was. A mutual mistake here, and that they were. Taking into consideration this law that had subsequently been found unconstitutional. So, why shouldn't we undo mistake. Because the 1 thing that wasn't. If we want to go with the legal fiction that it was a mutual mistake. The 1 thing that wasn't a mistake is that he intended to negotiate a better deal for himself. And that's what he did. And that's what he received on the back end. Now, the state is losing whatever benefit the state received from it. In his subsequent challenges, but it's. You know, my position is that the concept of void ab initio that coming out of NG, which, by the way, is. Factually inapplicable here. Is not. It does not extend to to extricate him from the negotiation. You know, it's the record does reflect that he, he initiated this, you know, he was fully admonished. He received that benefit and under Jones. I still do believe that that is enough that he to show that he weighs any constitutional. Challenges based on subsequent changes, such as. And see, where I'm a little troubled, though, is the stage that we're at. And you're saying that the defendant did not. Provide a substantial showing of a constitutional violation. And two things. One is that defendant tells us that. There's a charge out there in my background that says that I committed a violation of the law. And I didn't commit a violation of the law because that law was unconstitutional. So there was no violation, no crime whatsoever. And then the defendant tells us provides us with statements from the trial judge, which says that because of his background. Now, I guess the trial court judge could have said because of the lack of his background and then what you're saying would make more sense. But I think it comes back to I think because you've made some really good arguments. I want to be clear about that. And you you're able to see both sides of this, and I really appreciate that as well. But we don't know as the other two justices have been saying the whole time. We don't know. So why not let it go for an inventory hearing and let everybody figure it out? Because she already made the decision at. In the last. During the hearing on the state's motion to dismiss, and so what would the evidence show that he entered into the plea voluntarily and freely and he doesn't have a legal basis to have. Evidence will show. That's why. That's why you take evidence. We don't know what the evidence shows until the evidence is produced. At a hearing. So. In other words, why don't. Why don't we just do away with the first two steps? No. Saying that I guess why I went through the two points with you about how they're how it appears that maybe and I'm not making a decision now because we need to discuss this, but maybe he did provide a substantial showing of a constitutional violation. Because one, he provided us with information about this conviction, which we know is void of initial and he provided us with the comments that the trial judge made where the judge said. Showing that this conviction was considered because I was the only conviction that he had at that point that based on his background as opposed to based based on his lack of background. Because I think that's what I that's that's what that's what you kind of expect the judge to say if there's no background that based upon this person's lack of background. I'm going to go along with the agreement if they're really considering the lack of background, but we don't know. And you said that counseling. You're right. We don't know. I hear you. I believe that he has that there is enough here in this record to make a determination that he has not made a substantial showing that his constitutional rights were violated. And I think that that is whether or not she the trial court in her consideration of the or based on his background or based on a lack of still isn't enough because with regards to the trial court. He he was admonished that he would get would have to in order to enter into this plea waive all of his constitutional claims of error, including constitutional claims and that admonishment. He heard the silent the record reflects all of that right the record reflects that he signed that jury waiver and in the record reflects that the mid and this was exactly what he bargained for. So, I don't I, I think that it's an issue to extend, unlike all of these other cases that that petitioner cited, where, you know, it seems absolutely reasonable and correct to send Phillips back, it seems correct to send Smith and Williams back, but those are completely different circumstances, because they were after a finding or a verdict of guilty and not a negotiation. And that that is the different. Thank you very much, counsel. Thank you for these reasons and the reasons in our brief we ask that you affirm the lower court. Thank you, Attorney Sloan. Thank you, Attorney Rubio and you have five minutes reserved. Yes, thank you. Um, that DeVille entered into a guilty plea does does not waive a guilty plea is not a waiver of the constitutional right to due process or to the effective assistance of counsel during guilty plea proceedings. And he made a factual assertion which must be taken as true right now that he would not have pled guilty he wouldn't have accepted this plea. If he had known that that boy, that boy prior was actually void and the court couldn't consider it. And if he had known that he would not have been impeached with that prior if he had testified that Montgomery motion. So, granted. So you're saying that had he known that that law was unconstitutional would not have entered into the plea. But wouldn't it follow that counsel know. And because counsel did not know. No, there was no ineffective assistance of counsel. Well, counsel should have known I'm an appellate attorney and I knew. I mean, Aguilar was pending and all of this other case law was was right there for attorneys to use in zealously representing their clients and the record supports the fact that he waived his right to testify. Immediately after the Montgomery motion had been granted, and I think that the record is actually interesting. I was looking at it earlier this morning. The state actually now lead most of the charges pending against develop prior to the ruling on the Montgomery motion prior to him entering the guilty plea. They all the parties appeared ready for trial and then they rolled on the motion and limiting and then he withdrew his election for a jury and decided to plead guilty. Then he was sentenced. It's interesting to note that because we again, this is the factual dispute that needs to be developed at a hearing because we don't know if. Is is the agreed upon sentence something because his record is so slim or is it because the state's case was weak against him? Why did the state nolly all those charges before before plea negotiations actually resulted in a plea? What would he have testified to his his his only prior was a gun conviction. This was a case involving an attempt murder charge using a firearm there. He was he answered that he was going to testify to self-defense. It would have been basically a he said she said situation and if that prior hadn't come in he might have taken the stand. He might have been acquitted. We don't even have to prove that much at this point. But the the facts of those scenarios make it show that there's no rebuttal by the record. There's actually support in the record for DeVille's position that he would not have accepted this plea whether or not. The the his prior was the only thing that the court considered and that's not true. So we know for the the the you know, we know that the judge did refer to that prior during the acceptance of the plea. And like I said before, the judge did not have to accept the plea. The decision was hers to reject the plea. Counsel, would you say that it wasn't true that the prior was the only consideration? No, I'm saying that the prior was considered and that is enough in this scenario to require a finding that he made a substantial showing of a due process violation. But I was referring to counsel's arguments that the court also referenced aggravation and mitigation and and and the facts of the case. And so it can't be like definitively her argument is that can't be definitively pointed to as the reason for entering the accepting the guilty plea and entering that sentence. But we the PSI was waived in this case. We don't know what the facts of the case would have result would have been fleshed out if he had gone to trial. And we know that the knowledge occurred irrespective of the plea negotiations. So all at this point, DeVille has to show is that there was no affirmative that there is no affirmative showing that it did not affect the judge's decision. And here that the state did not know the other charges and, you know, make such a low offer because they knew that Aguilar could come 1 way or or the other. How do we know that that wasn't taken into the. That they not only I don't understand that they not only the charges because Aguilar was coming down, they not only other charges, they made a low offer. Maybe it was because, you know, everyone knew that essentially they were rolling the dice. You know, what's going to happen in Aguilar Aguilar was pending. Well, then if the if the state knew that Aguilar was coming down and could have affected this case, then they shouldn't have filed a Montgomery motion asking to be able to impeach DeVille with this only potentially at that time void prior conviction and have a ruling on that. That really impacted his decision making process and in waiving his right to a jury trial. And that would be, I think, inappropriate and at the very least shows that this was something that all the parties should have been aware of at the time. So. Again, at this point, we have to take all of the all of his his factual assertions is true. And if there's any dispute about what might have happened or what did happen or what the state knew or what defense counsel knew, then it should go through through a third stage evidentiary hearing. And then the final decision can be made there. I think all of my points have been made, unless I think I just wanted to touch on the fact that counsel repeatedly said that DeVille basically just forfeits these claims because he was a willing participant in the plea negotiations. But again, if he doesn't have all the information before him, he was an unwitting participant of plea negotiations, and he only made it to plea negotiations because of the erroneous Montgomery ruling. So, if this court doesn't have any further questions, we would ask that this court reverse the dismissal of those petition and remand for third stage evidentiary hearing proceedings. Okay. Do either of my colleagues have any additional questions for counsel? Okay, thank you very much. That concludes these proceedings. I'd like to thank you both for making very good arguments on today. That's a lot to consider, and certainly under consideration and issue our ruling as soon as possible. All right. Thank you. Thank you so much.